FOX ROTHSCHILD LLP
Michael R. Herz, Esq.
Joseph A. Caneco, Esq.
101 Park Avenue, 17th Floor
New York, New York 10178
(212) 878-7900

*Counsel to Yann Geron, Chapter 7 Trustee of*
*Club Ventures Investments, LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 7 |
| | : | |
| CLUB VENTURES INVESTMENTS, | : | Case No. 17-10060 (SHL) |
| LLC, *et al*. | : | |
| | : | (Jointly Administered) |
| | : | |
| Debtors[1]. | : | |

------------------------------------------------------------x

| | | |
|---|---|---|
| YANN GERON, Chapter 7 Trustee of | : | |
| Club Ventures Investments, LLC, *et al*., | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Pro. No. 19-01112 (SHL) |
| | : | |
| -against- | : | |
| | : | |
| MERIDIAN SPORTS CLUBS | : | |
| CALIFORNIA, LLC *d/b/a* | : | |
| DAVID BARTON GYM, | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------x

## CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER, PURSUANT TO FED. R. BANKR. P. 9019, APPROVING SETTLEMENT AGREEMENT RESOLVING ABOVE-CAPTIONED ADVERSARY PROCEEDING

---

[1]      The Debtors refer to DB 85 Gym Corp. (Case No. 16-13580), Club Ventures III, L.L.C. (Case No. 16-13581), Club Ventures X, LLC (Case No. 16-13582), Club Ventures Archive LLC (Case No. 16-13616), Club Ventures Limelight LLC (Case No. 16-13617), Club Ventures Miami LLC (Case No. 16-13618), and Club Ventures Investments LLC (Case No. 17-10060), all of which did business as DavidBartonGyms prior to their respective filings.

Yann Geron, the chapter 7 trustee (the "Trustee" or "Plaintiff") for the estates of Club Ventures Investments, LLC ("CV Investments") and affiliated debtors (collectively, the "Debtors"), and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), by and through his attorneys, Fox Rothschild LLP, hereby files this motion (the "Motion") for entry of an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement agreement (the "Settlement Agreement") between the Trustee, on behalf of the Debtors' estates, and defendant, Meridian Sports Clubs California, LLC (the "Defendant" and together with the Trustee, the "Parties"), settling and resolving the claims in the Adversary Proceeding.  In support of the Motion, the Trustee respectfully states:

## JURISDICTION

1.      This Court has jurisdiction over this Motion and the Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue of the Adversary Proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief sought herein is Bankruptcy Rule 9019.

## BACKGROUND

**A.      Bankruptcy Procedural History**

4.      Prior to filing for bankruptcy, the Debtors owned and operated a chain of fitness centers under the DavidBartonGym brand name at various locations in New York, Boston, Chicago, Seattle, and Miami.[2]

---

[2] The specific locations operated by each of the Debtors is set forth in the Complaint filed in this Adversary Proceeding.

2

5.        On December 23, 2016, debtors DB 85 Gym Corp., Club Ventures III, L.L.C., and Club Ventures X, LLC (collectively, the "Legacy Debtors"), each filed voluntary petitions for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

6.        On December 30, 2016, debtors Club Ventures Miami LLC, Club Ventures Archive LLC, and Club Ventures Limelight LLC (collectively, the "Non-Legacy Debtors"), each filed petitions for relief under chapter 7 of the Bankruptcy Code.

7.        On January 12, 2017 (the "CV Investments Petition Date"), CV Investments filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

8.        Upon information and belief, debtor CV Investments is the parent company of the Legacy Debtors, and there is a high degree of common ownership of CV Investments and the Non-Legacy Debtors.

9.        Following each of the Debtors' respective petition dates, the Trustee was appointed as the interim chapter 7 trustee in each of the respective Debtors' cases.

10.        On February 7, 2017, the Court entered an order directing the joint administration of the Debtors' cases.

11.        By operation of law, on February 17, 2017, the date of the initial section 341(a) meeting of creditors in the Debtors' cases, the Trustee was designated as the permanent chapter 7 trustee for the jointly administered debtors, which appointment remains in effect.

12.        On April 9, 2019, the Trustee commenced the above-captioned Adversary Proceeding against the Defendant by filing a complaint (the "Complaint")

**B.        Adversary Proceeding Claims Against the Defendant**

13.     On or about December 1, 2010, CV Investments and the Defendant entered into a management agreement whereby the Defendant would manage the day-to-day affairs of all then-existing CV Investments-owned DavidBartonGyms (the "Meridian Management Agreement").

14.     In addition to setting forth the Defendant's management duties and authority, the Meridian Management Agreement implemented procedures by which the Defendant's then-existing fitness centers would or could convert to DavidBartonGyms.

15.     The Meridian Management Agreement envisioned expansion of the DavidBartonGym brand across both CV Investments-owned entities and Defendant-owned entities (notwithstanding that CV Investments and the Defendant were separate entities as between each other).

16.     During all relevant times, the Debtors and the Defendant shared certain officers, directors, and management, as well as a high degree of common ownership, but the Debtors and the Defendant maintained ostensibly separate corporate identities.

17.     After investigation of the Debtors' financial affairs, the Trustee filed the Complaint seeking to avoid and recover payments made by the Debtors to, or for the benefit of, the Defendant for which the Debtors received no value, pursuant to sections 547, 548, 549, and 550 of the Bankruptcy Code.

18.     In the Complaint the Trustee alleged that such payments included compensation of the common chief executive officer of the Defendant and the Debtors (such compensation, having been paid solely by the Debtors, the "Compensation Payments"), payments to various third-party service providers (such payments, having been paid solely by the Debtors, the "Third-Party Payments"), management fees under the Meridian Management Agreement, and various other transfers for which the Debtors did not receive value in the two years prior to the CV Investments

4

Petition Date (the "Transfers") or, alternatively, within the one-year period prior to CV Investments Petition Date (the "Insider Preference Transfers").

19.    Additionally, in the Complaint the Trustee alleged that the Defendant had used and was using valuable trademarks (the "Trademarks") which were owned by debtor DB 85 Gym Corp. as of its petition date (and therefore property of DB 85 Gym Corp.'s bankruptcy estate), and the Trustee sought (i) an accounting of any payments made by the Defendant for the use of the Trademarks, (ii) turnover of the fair monetary value of the use of the Trademarks pursuant to section 542 of the Bankruptcy Code, and (iii) an order enjoining the Defendant from any further use of the Trademarks.

20.    Based upon the Trustee's investigation, the Compensation Payments totaled approximately $1,302,500.00, the Third Party Payments totaled approximately $58,416.07, the Transfers totaled approximately $533,148.22, and the Insider Preference Transfers totaled approximately $255,149.00.  The Trustee also sought the awarding of attorneys' fees and costs.

**C.    The Settlement Agreement**

21.    Over the course of the last year, the Parties have engaged in extensive negotiations in an attempt to resolve the claims in the Adversary Proceeding in lieu of protracted litigation.

22.    The Defendant asserted that it sold all of its assets to Icon Fit Clubs LLC ("Icon") in or around June of 2018, and that following the sale of the fitness business to Icon, the Defendant is inoperative and effectively an empty shell without assets, such that there would be limited, if any, opportunity for the Trustee to recover on a judgment.

23.    In support of its asserted financial status, the Defendant provided the Trustee with voluminous financial records, including bank account statements over a three-year period, federal and state tax returns, and documents related to the Defendant's sale of the business to Icon.

Additionally, the Defendant's principal, Leonard Rifkind, provided the Trustee with a signed affidavit (the "Rifkind Affidavit") summarizing the Defendant's financial condition, including attesting to the Defendant's lack of assets and listing the Defendant's liabilities, which totaled nearly $1 million. A copy of the Rifkind Affidavit will be provided upon request of counsel to the Trustee.

24.     Based on the review of the information supplied by the Defendant as well as the Rifkind Affidavit, the Trustee has determined, in his business judgment, that it is in the best interests of the estates to enter into the Settlement Agreement rather than incurring potentially exorbitant litigation costs to obtain a judgment which is likely to produce little, if any, recovery. A true and accurate copy of the Settlement Agreement is attached as Exhibit A. Most pertinently, the Settlement Agreement provides:

- The Defendant shall pay the Trustee a total of $40,000.00 (the "Base Settlement Amount"), payable in the following installments: (i) $10,000.00 due at the time of the execution of the Settlement Agreement (the "Settlement Deposit"); and (ii) $30,000.00 due within thirty (30) days of the Court's entry of an order approving this Motion. The Settlement Deposit has been remitted by the Defendant to the Trustee and the Trustee is holding the payment in trust pending the Court's entry of an order approving the Settlement Agreement.

- In the event the Defendant receives any payments from Icon in excess of $5,000.00 with respect to the Defendant's claims against Icon, the Defendant shall remit any such payment(s) to the Trustee. Upon the closing of the Debtors' cases, the Defendant shall have a continuing duty to inform the Trustee of the Defendant's receipt of any additional payments from Icon, and the Trustee shall reserve the right

to request the re-opening of the Debtors' cases so that any such additional payments from Icon can be administered as part of the Debtors' estates.

- The Defendant has executed and delivered to the Trustee a consent judgment (the "Consent Judgment") in favor of the Trustee in the amount of $500,000.00, which shall be docketed upon the Court's approval of this Motion. A true and accurate copy of the Consent Judgment is attached as Exhibit B.

- The Defendant has agreed to waive any claims it may have or become entitled to under section 502(h) of the Bankruptcy Code.

- The Parties have agreed to mutual releases with respect to the claims in the Complaint and Adversary Proceeding, as more fully set forth in the Settlement Agreement.

## RELIEF REQUESTED

25.     The Trustee requests that the Court enter an order approving the Settlement Agreement pursuant to Bankruptcy Rule 9019.

26.     Bankruptcy Rule 9019 provides that "[o]n a motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of bankruptcy estates, and providing for the efficient resolution of bankruptcy cases. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1993).

27.     In ruling on a motion brought under Bankruptcy Rule 9019, the Court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. *See Protective Comm. For Independent Stockbrokers of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968); *Fischer v. Pereira (In re 47-49 Charles Street, Inc.*, 209 B.R. 618, 620 (S.D.N.Y.

7

1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); *In re Fugazy*, 150 B.R. (Bankr. S.D.N.Y. 1993).

28.    In order to reach such a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer Ferry*, 390 U.S. at 424-25.

29.    To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest level of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); *In re International Distribution Centers, Inc.*, 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

30.    Courts should also consider whether the proposed settlement agreement is a fair and reasonable course of action for the Debtors' estates in light of limited availability of assets, and giving consideration to the interests of creditors and avoiding burdening the estate with undue waste or needless or fruitless litigation. *See In re Del Grosso*, 106 B.R. 165, 167-68 (Bankr. N.D. Ill. 1989 (citations omitted); *see also In re Culmetch, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); *In re Lawrence & Erausguin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); *In re Bell & Beckwith*, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

31.    Notably, courts are not required to determine conclusively the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to ensure that the settlement reaches the threshold of reasonableness.  Instead, courts should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the

8

best interests of the estate and otherwise does not fall outside the range of reasonableness. *See In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 2000); *In re Apex Oil Co.*, 92 B.R. 847, 866-67 (Bankr. E.D. Mo. 1988); *see also In re Petersburg Regency LLC*, 540 B.R. 508, 536 (Bankr. D.N.J. 2015) ("The court should not conduct a 'mini-trial' on the merits, but 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'").

32.     Further, in considering whether to approve a settlement, bankruptcy courts rely "heavily on the trustee" and "under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification." *In re Martin*, 91 F.3d at 395; *see also In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D.Del. 2004) ("the court should defer to a trustee's judgment so long as there is a legitimate business justification for his action."). In this vein, courts will defer to a trustee's judgment absent evidence that the provisions of a settlement are unreasonable. *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 250 (D. Del. 1998).

33.     As noted above, based upon his investigation of the financial affairs of the Debtors and discussions with and documentation provided by the Defendant's counsel (including the Rifkind Affidavit), the Trustee believes in his business judgment that entering into the Settlement Agreement is in the best interests of the Debtors' estates and it is fair and reasonable to accept the Base Settlement Amount and the Consent Judgment in satisfaction of the Trustee's claims in the Adversary Proceeding.  The Defendant is an entity with no assets, making any recovery unlikely and subject to prolonged and expensive litigation.  The Settlement Agreement therefore forestalls the expenditure of time and money necessary to adjudicate and recover on the remaining claims against the Defendant.  Additionally, the Consent Judgment provides the Trustee with the ability to collect additional amounts if the Defendant's business reactivates or the Defendant receives a

transfer of assets.  Alternatively, the Trustee can potentially sell the Consent Judgment to bring assets into the Debtors' estates.

34.      Aside from the lack of financial wherewithal, the Trustee also recognized that if the Adversary Proceeding continued, the Trustee faced the risk that Defendant could raise potential defenses to the merits of the claims in the Adversary Proceeding.  Further, as noted, a settlement also avoids the significant legal fees that would be borne in connection with pursuit of the claims, which, even if successful, would lead to a judgment that may not be collected upon.

35.      For all of the foregoing reasons, the Trustee respectfully requests that the Court approve the Settlement Agreement because it is the appropriate exercise of the Trustee's business judgment and falls well within the range of reasonableness.  The Trustee respectfully requests that he be authorized to consummate the terms of the Settlement Agreement.

## **NOTICE AND PROCEDURE**

36.      Contemporaneously with filing of the Motion, the Trustee filed with the Court a notice of the relief requested in this Motion and will serve said notice by first class mail upon all creditors and parties in interest who are entitled to notice pursuant to Bankruptcy Rule 2002.  A complete copy of the Motion will also be served by first class mail upon the United States Trustee and any party who filed a request for notice of pleadings in the Debtors' cases.  The Trustee respectfully submits that notice of this Motion complies with Bankruptcy Rule 2002 and is otherwise reasonable and appropriate, and that no other or further notice of the relief requested herein is warranted or required.

37.      This Motion does not raise any novel issues of law and does not require consideration of authorities other than those cited herein.  Accordingly, the Trustee respectfully

requests that the Court dispense with and waive the requirement of Local Rule 9006-1(c) relating to the submission of an accompanying memorandum of law.

38.     No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE,** the Trustee respectfully requests that the Court enter an order substantially in the form annexed hereto as <u>Exhibit C</u> authorizing and approving the Settlement Agreement and granting such other and further relief as is just and proper.


Dated:  April 28, 2021

<div style="margin-left: 50%;">

**FOX ROTHSCHILD LLP**
*Attorneys for Plaintiff, Yann Geron,*
*Chapter 7 Trustee*


By: */s/ Michael R. Herz*
    Michael R. Herz
    Joseph A. Caneco
    101 Park Avenue, 17th Floor
    New York, NY 10178
    Telephone:  (212) 878-7900
    Fax:  (212) 692-0950
    mherz@foxrothschild.com

</div>

121244503